IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARK ANTHONY TROUTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-08-1376-C |
| | ) | |
| JUSTIN JONES, Director of O.D.O.C., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# **REPORT AND RECOMMENDATION**

Invoking 42 U.S.C. § 1983 and the Oklahoma constitution, Mr. Mark Troutt alleges constitutional violations arising out of the imposition of a grievance restriction on October 19, 2006. Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at pp. 2, 12 (Aug. 7, 2009) ("Fourth Amended Complaint"); *see also id.*, Exh. 7 (grievance restriction imposed on October 19, 2006). The Defendants urge dismissal on grounds of Eleventh Amendment immunity, the *Rooker-Feldman* doctrine, nonexhaustion of administrative remedies, *res judicata*, and expiration of the limitations period.[1] The Court should grant the motion for

---

[1] The Defendants have urged summary judgment in the alternative, presumably based on their evidence involving litigation in state court between the same parties on similar allegations. However, the Court can take judicial notice of the state court proceedings in connection with the motion to dismiss. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) (stating that matters of public record are subject to judicial notice and that facts subject to judicial notice "may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment" (citations omitted)); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (holding that the district court could take judicial notice of material in the state court's file for purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6)). Apart from the references to the state court litigation, the Defendants have not presented an argument for summary judgment that is separate from the one for dismissal.

dismissal on the Section 1983 claims: (1) for damages in the Defendants' official capacities, and (2) for a permanent injunction. The dismissal would leave in place: (1) the Plaintiff's Section 1983 claims for money damages in the Defendants' personal capacities, and (2) the claims arising under the Oklahoma Constitution.

## Standard on the Motion to Dismiss

The Defendants seek dismissal for failure to state a valid claim. *See* Fed. R. Civ. P. 12(b)(6).[2] In determining whether dismissal is appropriate, the Court considers whether the

---

[2] The Defendants have also referred to Federal Rule of Civil Procedure 12(b)(1) in the section involving Eleventh Amendment immunity. *See infra* pp. 3-5. This rule addresses motions to dismiss based on a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The Supreme Court has not decided whether Eleventh Amendment immunity is based on subject-matter jurisdiction. *See Wisconsin Department of Corrections v. Schacht*, 524 U.S. 381, 391-92 (1998) (noting that the Supreme Court had not decided whether Eleventh Amendment immunity "is a matter of subject-matter jurisdiction"); *cf. Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997) (stating that the Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction"). In some published decisions, the Tenth Circuit Court of Appeals has based Eleventh Amendment immunity on subject-matter jurisdiction. *See Thompson v. Colorado*, 278 F.3d 1020, 1023 (10th Cir. 2001) ("Under circuit precedent, a defendant's assertion of Eleventh Amendment immunity calls into question the subject matter jurisdiction of the district court." (citations omitted)), *abrogated on other grounds by Guttman v. Khalsa*, 446 F.3d 1027, 1034 (10th Cir. 2006). Elsewhere, however, the court has distinguished between subject-matter jurisdiction and sovereign immunity. *See*, *e.g.*, *Osage Nation v. Oklahoma*, 260 Fed. Appx. 13, 17 (10th Cir. Dec. 26, 2007) (unpublished op.) ("The district court erred to the extent it conflated the distinct concepts of subject matter jurisdiction and sovereign immunity."), *cert. denied*, __ U.S. __, 129 S. Ct. 104 (2008). Ultimately, the characterization of Eleventh Amendment immunity would prove immaterial here because the standard under Rules 12(b)(1) and 12(b)(6) is the same when the Defendants' challenge is based on the allegations in the complaint. *See Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999) ("the standards for reviewing dismissals granted under 12(b)(1) and 12(b)(6) are identical" (citation omitted)); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992) (*per curiam*) (stating that the "same standard" applies in review of dismissals for failure to state a claim under Rule 12(b)(6) and for lack of subject-matter jurisdiction under Rule 12(b)(1)); *see also Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (presuming the truth of the plaintiff's allegations in the complaint when the defendants moved for dismissal under Federal Rule of Civil Procedure 12(b)(1) on grounds of Eleventh Amendment immunity).

Plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citation omitted). In applying this standard, the Court must assume the truth of all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the Plaintiff. *See Bryson v. Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990).

Section 1983 Claims that Should Be Dismissed

The Court should dismiss the Section 1983 claims: (1) for damages in the Defendants' official capacities, and (2) for a permanent injunction.

I.  Official Capacity Claims: Eleventh Amendment Immunity from Monetary Damages

The Defendants are current and former employees of the Department of Corrections. *See* Fourth Amended Complaint at pp. 1-2, 4. As the Defendants argue, the federal official capacity claims for damages are foreclosed under the Eleventh Amendment.

This amendment bars suit in federal court against a state. *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). When a state official is named as a defendant, the Eleventh Amendment continues to bar the action "if the state is the real, substantial party in interest." *Frazier v. Simmons*, 254 F.3d 1247, 1253 (10th Cir. 2001).

An exception exists when Eleventh Amendment immunity has been waived by the state or abrogated by Congress. *See Chaffin v. Kansas State Fair Board*, 348 F.3d 850, 866 (10th Cir. 2003). But the State of Oklahoma has not waived its Eleventh Amendment immunity. *See* Okla. Stat. tit. 51 § 152.1(B) ("it is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution"). And Congress did not abrogate the states' Eleventh Amendment immunity through the enactment of Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979). Thus, the Eleventh Amendment forecloses assertion of an official capacity claim against the Defendants for monetary relief. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 120 (1984).

According to Mr. Troutt, "[a] suit challenging the constitutionality of a state official's action . . . is an exception to the general proposition that states cannot be sued in federal courts . . . ." Plaintiff's Pro-Se Motion in Opposition to Defendants [sic] Motion to Dismiss/Motion for Summary Judgment and Brief in Support at p. 8 (Oct. 29, 2009) ("Plaintiff's Response"). The Plaintiff relies in part on *Ex Parte Young*, 209 U.S. 123 (1908). *Id.* But *Ex Parte Young* holds that Eleventh Amendment immunity does not protect a state official sued for prospective injunctive relief. *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). Here, the Defendants have sought Eleventh Amendment immunity only for the official capacity claims for monetary damages. Thus, the Plaintiff's argument is not applicable.

4

Mr. Troutt also questions immunity based on the Defendants' "direct involvement" in the constitutional violations. Plaintiff's Response at p. 9. But this argument would relate to personal liability rather than immunity under the Eleventh Amendment.[3] As a result, this theory does not affect application of the Eleventh Amendment in the Defendants' official capacities.

Because Mr. Troutt cannot maintain official capacity claims for damages, the Court should dismiss these causes of action without prejudice to refiling.[4]

II.     All Claims for a Permanent Injunction

The Defendants seek dismissal based in part on the failure to plead facts that would suggest irreparable harm. Motion to Dismiss/Motion for Summary Judgment with Brief in Support at p. 7 (Oct. 12, 2009) ("Defendants' Dispositive Motion"). The Defendants' argument is persuasive.

---

[3]     *See Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 124 n.15 (1st Cir. 2003) (stating that the sufficiency of the defendants' involvement for liability is distinct from the question of Eleventh Amendment immunity).

[4]     *See Polaski v. Colorado Department of Transportation*, 198 Fed. Appx. 684, 686-87 (10th Cir. Aug. 2, 2006) (unpublished op.) (affirming a dismissal under the Eleventh Amendment, but noting that a "dismissal for lack of subject matter jurisdiction must be *without* prejudice" and remanding with instructions to make the dismissal without prejudice (emphasis in original; citation omitted)); *see also Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("dismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims" (emphasis in original; citations omitted)).

A. Test for a Permanent Injunction

A party requesting a permanent injunction must show that: (1) he has actually succeeded on the merits of the underlying claim; (2) he would suffer irreparable harm in the absence of the injunction; (3) the threatened injury to himself would outweigh the harm to the adversary from the injunction; and (4) the issuance of an injunction would not adversely affect the public interest. *See Fisher v. Oklahoma Health Care Authority*, 335 F.3d 1175, 1180 (10th Cir. 2003). "A permanent injunction cannot be granted if any of the four requirements has not been met." *Utah Environmental Congress v. U.S. Bureau of Land Management*, 119 Fed. Appx. 218, 220 (10th Cir. Dec. 15, 2004) (unpublished op.) (citation omitted).[5]

B. Irreparable Injury

Mr. Troutt must allege a facially valid basis to infer irreparable injury in the absence of an injunction. *See supra* pp. 2-3, 6. An injury is "irreparable" only if it is "substantial," "irreparable," "clear," and "imminent." *Heron v. Denver*, 317 F.2d 309, 311 (10th Cir.

---

[5] The Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(A), further restricts injunctive relief:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is necessarily drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

1963). No such inference is plausible here. *See supra* pp. 2-3 (discussing the effect of plausibility on a motion to dismiss).

In the complaint, Mr. Troutt alleged that Dennis Cotner had retaliated by imposing a grievance restriction for one year. Fourth Amended Complaint at p. 2. This allegation suggests that the restriction would have ended on October 19, 2007, almost two years before he filed the fourth amended complaint. *See infra* pp. 14, 16. He has not alleged anything that would suggest ongoing retaliation involving a substantial, irreparable, clear, and imminent injury. *See supra* pp. 6-7. Thus, the fourth amended complaint does not supply a plausible basis to infer irreparable injury in the absence of an injunction. *See Green v. Johnson*, 977 F.2d 1383, 1387-88 (10th Cir. 1992) (upholding the denial of an injunction in part because of the absence of evidence involving ongoing retaliation). Because the defect is potentially curable, however, the dismissal should be without prejudice.[6]

## Section 1983 Claims that Should Remain

Dismissal under the Eleventh Amendment would leave Section 1983 claims in the Defendants' personal capacities for damages. On these claims, the Defendants argue that the state courts' decisions are conclusive on the issue of exhaustion of available administrative remedies, that a remedy is unavailable under the *Rooker-Feldman* doctrine, that the claims are untimely, and that *res judicata* prevents relief. All of the contentions are invalid as a matter of law.

---

[6] *See Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (stating that dismissal without prejudice should result when a *pro se* litigant's pleading defects are potentially curable).

I.   Preclusive Effect of the Prior Adjudication on Exhaustion of Administrative Remedies

The Defendants argue that the Plaintiff has failed to exhaust available administrative remedies. However, the Defendants do not challenge the Plaintiff's allegations or evidence regarding an actual failure to exhaust available administrative remedies. Instead, the Defendants contend that the state courts had determined the exhaustion issue and that the federal district court is bound by this determination. The argument is invalid as a matter of law because the state courts were addressing a different exhaustion requirement and a different time-period.

Two separate exhaustion requirements exist. In Okla. Stat. tit. 57 § 564, Oklahoma law requires inmates to exhaust available administrative remedies prior to initiation of an action in "district court." Separately, the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) requires exhaustion of available administrative remedies prior to a federal suit over prison conditions.

The Defendants have not presented the federal district court with a copy of the dispositive motion that they had filed in state district court. As a result, the federal district court's only information about the nature of the Defendants' earlier argument is the state district court dismissal and the order of affirmance in the Oklahoma Court of Civil Appeals. The state district court referred to Okla. Stat. tit. 57 § 564.1,[7] which is inapplicable.[8] The

---

[7]   Defendants' Dispositive Motion, Exh. 2.

[8]   Okla. Stat. tit. 12 § 564.1 governs judicial review over prison disciplinary proceedings.

Oklahoma Court of Civil Appeals referred to Okla. Stat. tit. 57 §§ 564 and 566. Defendants' Dispositive Motion, Exh. 3 at p. 8. But there is nothing in either state court decision which suggests the presence of an issue involving exhaustion under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

The statutes are distinct, and the Defendants have not suggested that administrative exhaustion under Okla. Stat. tit. 57 § 564 is required for initiation of a Section 1983 suit in federal district court. Instead, the Defendants base their exhaustion argument solely on 42 U.S.C. § 1997e(a),[9] which was never addressed in any of the state court decisions attached to the dispositive motion.

The state courts were also addressing a time-period distinct from the one involved in the present action. Mr. Troutt initiated the state court action on March 26, 2007. Defendants' Dispositive Motion, Exh. 1. Thus, in the state court action, the pertinent issue was whether Mr. Troutt had exhausted available administrative remedies prior to March 26, 2007. *See* Defendants' Dispositive Motion, Exh. 3 at p. 11 (arguing in state district court that Mr. Troutt's statutory obligation was to exhaust "administrative remedies before filing suit"). Mr. Troutt did not initiate the present suit until December 23, 2008. By then, the state appellate process had already ended. *See infra* p. 16. Thus, by definition, the state courts could not possibly have determined the sufficiency of exhaustion for the time-period that is at issue here.

---

[9] Defendants' Dispositive Motion at pp. 9, 11.

The distinction is material. Even if Mr. Troutt had not exhausted administrative remedies when he sued in state court, he might have done so before he began the present action. That possibility is not foreclosed by the face of the complaint or the evidence attached to the Defendants' dispositive motion. As a result, the Court cannot grant dismissal or summary judgment based on the state courts' resolution of the exhaustion issue as of March 26, 2007.

The Defendants have not presented any evidence of an actual failure to exhaust available administrative remedies. Instead, the Defendants have relied exclusively on the state courts' resolution of the exhaustion issue. However, there the issue had been different because the state courts were addressing a different exhaustion requirement and a different time-period. As a result, even if the federal court were bound by the state court decisions on exhaustion, they would not dictate resolution of the issue under a different statute for a different time-period.

II.    The *Rooker-Feldman* Doctrine

The Defendants argue that relief under Section 1983 is unavailable under the *Rooker-Feldman* doctrine. This argument is invalid, as it is based on a mischaracterization of the Plaintiff's claim.

The *Rooker-Feldman* doctrine prevents a claimant from basing recovery on review of a state court decision. *See Bolden v. Topeka*, 441 F.3d 1129, 1139 (10th Cir. 2006) ("The *Rooker-Feldman* doctrine prohibits federal suits that amount to appeals of state-court

judgments."). In the fourth amended complaint, Mr. Troutt has not mentioned the state court decisions and is obviously not basing relief on their reversal.[10] Instead, he is alleging retaliation on October 19, 2006, through placement on a grievance restriction. Thus, Mr. Troutt has not asked the federal district court to take any action on the state court rulings. In these circumstances, the *Rooker-Feldman* doctrine is inapplicable.[11]

III. The Statute of Limitations

The Defendants also contend that the action is untimely. This argument is invalid as a matter of law.

---

[10] In the original complaint, Mr. Troutt stated that he was appealing from state court to the Western District of Oklahoma. Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at p. 2 (Dec. 23, 2008). But, the amendments nullified the original complaint. *See Mink v. Suthers*, 482 F.3d 1244, 1254 (10th Cir. 2007) ("an amended complaint 'supercedes an original complaint and renders the original complaint without legal effect'" (citations omitted)). Mr. Troutt has confirmed that he is "not ask[ing] the court to Appeal state court decision." Plaintiff's Pro Se Reply in Opposition to Defendants' Reply Brief in Support of the Motion for Judgment on the Pleadings Motion for Summary Judgment [Doc. 57] at p. 5 (Nov. 19, 2009); *see also* Plaintiff's Response at p. 7 (Mr. Troutt's statement that he "is not asking a review of the State Courts [sic] judgment" (citation omitted)).

[11] Similarly, the Tenth Circuit Court of Appeals held that the *Rooker-Feldman* doctrine did not apply in *Bolden v. Topeka*, 441 F.3d 1129, 1145 (10th Cir. 2006). The court reasoned that the plaintiff had not "ask[ed] the district court to overturn the state-court judgment." *Id*. The omission proved material, as the court explained:

> *Rooker-Feldman* does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment. A suit on such claims could not be characterized as an "appeal" of the state-court judgment, which is the core concern of *Rooker-Feldman*.

*Id*.

The argument on timeliness is couched as one for dismissal based on the allegations in the fourth amended complaint. According to the Defendants, a two-year period of limitations exists and the Plaintiff alleges that the wrongful action had taken place on October 19, 2006, more than two years before he initiated the present action. *See supra* p. 9. These arguments are correct as far as they go. However, the Defendants also argue elsewhere that the Plaintiff had unsuccessfully sued them in state court for the same wrongful conduct. This argument implicates the Oklahoma savings statute, Okla. Stat. tit. 12 § 100, which would render the present action timely.

A. The Existence of a Two-Year Period

For the Section 1983 claims, the parties agree that the applicable statute of limitations is governed by Oklahoma's provision for personal injury actions. Defendants' Dispositive Motion at pp. 6-7; Plaintiff's Response at p. 4; *see Meade v. Grubbs*, 841 F.2d 1512, 1524 (10th Cir. 1988). In Oklahoma, the limitations period for personal injury actions is two years. *See* Okla. Stat. tit. 12 § 95(A)(3).

B. Accrual of the Claim on October 19, 2006

Mr. Troutt claims that the alleged constitutional violations had taken place on October 19, 2006. *See supra* p. 1. Thus, the cause of action would ordinarily have accrued at that time. *See Workman v. Jordan*, 32 F.3d 475, 482 (10th Cir. 1994) (stating that a Section 1983 claim had accrued when the alleged act of retaliation had taken place).

C. The "Continuing Violation" Doctrine

In an effort to avoid the time-bar, the Plaintiff alleges an "injury for one year" and argues that the limitations period did not begin until the year had ended. Plaintiff's Response at p. 5.

Presumably, Mr. Troutt is attempting to invoke the "continuing violation" doctrine. This principle allows "a Title VII plaintiff to challenge incidents that occurred outside the statutory time limitations . . . if such incidents are sufficiently related and thereby constitute a continuing pattern of discrimination." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).[12] Reliance on this doctrine would be misguided.

"The continuing violation doctrine permits a court to look backwards to the entirety of a continuing wrong to assess its cumulative effect, so long as an injurious act falls within the statute of limitations period." *Burkley v. Correctional Healthcare Management of Oklahoma, Inc.*, 141 Fed. Appx. 714, 716 (10th Cir. July 8, 2005) (unpublished op.) (citations omitted). But the theory is based on continuation of the "unlawful acts" rather

---

[12] The Tenth Circuit Court of Appeals has not squarely decided the applicability of the continuing violation doctrine in Section 1983 actions. *See Burkley v. Correctional Healthcare Management of Oklahoma, Inc.*, 141 Fed. Appx. 714, 716 n.2 (10th Cir. July 8, 2005) (unpublished op.) ("It appears that we have not yet applied this doctrine to suits under 42 U.S.C. § 1983." (citations omitted)); *Tibbs v. Texas*, 77 Fed. Appx. 459, 460 (10th Cir. Oct. 3, 2003) (unpublished op.) ("it is unclear whether a continuing violation theory may be applied to § 1983 claims" (citation omitted)); *see also Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("Hunt cites no case in which a court has extended the continuing violation doctrine to a § 1983 claim."); *Frazier v. Jordan*, 2007 WL 60883, Westlaw op. at 4 (10th Cir. Jan. 10, 2007) (unpublished op.) ("Frazier has failed to provide any authority in which this circuit has applied the continuing violations doctrine to a § 1983 claim." (citations omitted)).

than "continual ill effects from the original violation." *Parkhurst v. Lampert*, 264 Fed. Appx. 748, 748 (10th Cir. Feb. 12, 2008) (unpublished op.) (citation omitted).

Mr. Troutt knew that his constitutional rights had allegedly been violated on October 19, 2006, when he was placed on a grievance restriction. Continuation of the harm does not postpone accrual of the statute of limitations. *See supra* pp. 13-14. Consequently, the limitations period would ordinarily have expired on October 20, 2008.[13] In these circumstances, the Court should reject the Plaintiff's effort to avoid the time-bar based on continuation of the grievance restriction for a year.

### D. Expiration of the Limitations Period Based on Accrual of the Claim on October 19, 2006

Mr. Troutt's claims accrued on October 19, 2006. *See supra* p. 12. But the Plaintiff did not file the fourth amended complaint until more than two years and nine months later. *See infra* p. 16 (noting that the fourth amended complaint was filed on August 7, 2009).[14] On its face, the filing of the fourth amended complaint in August 2009 would appear to fall over nine months outside of the two-year window for the filing of a Section 1983 suit.

---

[13] Two years from October 19, 2006, would have been October 19, 2008. October 19 was a Sunday, entitling Mr. Troutt to an extra day for filing. *See* Fed. R. Civ. P. 6(a)(3) (2008), *amended* (Dec. 1, 2009).

[14] The Court may assume *arguendo* that the fourth amended complaint did not relate back to the filing of the original complaint. *See* Fed. R. Civ. P. 15(c). The outcome would be the same regardless of whether the claim relates back to the date of the original complaint. *See infra* pp. 15-18.

E.  The Savings Period

But the inquiry cannot end there.  In arguing that the Court lacks jurisdiction, the Defendants point out that the Plaintiff had filed a virtually identical suit in state district court, asserting the same claims against the same defendants.[15]

This argument implicates Oklahoma's savings statute, which provides:

> If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff . . . may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

Okla. Stat. tit. 12 § 100.  Although the Plaintiff has not relied on the savings statute, the Court must consider the provision to determine whether the Defendants are entitled to prevail as a matter of law on their timeliness defense.  *See Moore v. Fields*, 464 F.2d 549, 550-51 (6th Cir. 1972) (*per curiam*) (reversing based on *sua sponte* consideration of the state savings statute).  The Court should answer this question in the negative.

---

[15]   In challenging jurisdiction, the Defendants point to the litigation in state court and argue:

- "The Plaintiff here commenced this federal lawsuit addressing the same facts and circumstances . . . ."

. . . .

- "[T]he substantive claims, the underlying facts and the defendants have remained the same."

. . . .

- "Plaintiff previously litigated the issue pending herein against these Defendants . . . ."

Defendants' Dispositive Motion at pp. 8-9.

Under the savings statute, two issues are pertinent: (1) when the dismissal took place; and (2) whether the state court's dismissal was on the merits.

The pertinent date of the dismissal is October 27, 2008. The state district court granted the motion to dismiss on September 13, 2007,[16] but the state appellate process continued until October 27, 2008.[17] Under the savings statute, the critical date is when the state appellate process is completed. *See Grider v. USX Corp.*, 847 P.2d 779, 784-85 (Okla. 1993) (holding that under the Oklahoma savings statute, the one-year period began when the appeal had been finally acted upon through the United States Supreme Court's denial of *certiorari*). Thus, Mr. Troutt would have had one year from October 27, 2008, to file a new action if the dismissal had not been "on the merits." As noted above, Mr. Troutt filed the fourth amended complaint on August 7, 2009,[18] which was within the one-year savings period.

As a result, the dispositive issue for timeliness is whether the state court's dismissal was "otherwise than upon the merits." *Supra* p. 15 (quoting Okla. Stat. tit. 12 § 100). If the dismissal was not on the merits, the filing of the original complaint would have fallen within the one year savings period.

---

[16] Defendants' Dispositive Motion, Exh. 2.

[17] On October 27, 2008, the Oklahoma Supreme Court denied *certiorari*. Defendants' Dispositive Motion, Exh. 4.

[18] *See supra* p. 14.

The prior dismissal was not on the merits. The state district court cited both Okla. Stat. tit.12 § 2012(B)(1) and (6), but relied solely on nonexhaustion as a basis for dismissal. Defendants' Dispositive Motion, Exh. 2. Thus, the state appeals court upheld the dismissal solely on grounds of nonexhaustion, which was characterized as a jurisdictional defect. Defendants' Dispositive Motion, Exh. 3 at pp. 8, 11.

Under Oklahoma law, a judicial decision is considered "on the merits" when it is based on "the substance of a claim or defense" rather than "purely procedural or technical grounds." *Pettyjohn v. Plaster*, 956 P.2d 948, 950 (Okla. Civ. App. 1998) (citations omitted). For this distinction, the Oklahoma Court of Civil Appeals has adopted the following definition:

> A judgment is rendered on the merits "when it amounts to a declaration of the law as to the respective rights and duties of the parties, based on the ultimate facts or state of facts disclosed by the pleadings, and evidence upon which the right of recovery depends, irrespective of formal, technical, or dilatory objections or contentions."

*Id.* (citations omitted).

Under this definition, dismissal on exhaustion grounds does not constitute a ruling on the merits. Indeed, the exhaustion requirement involves a classic requirement of procedure rather than substance.[19]

---

[19] *See Waste Connections, Inc. v. Oklahoma Department of Environmental Quality*, 61 P.3d 219, 223 (Okla. 2002) (stating that "[t]he exhaustion rule is one of 'orderly procedure'" (citation omitted)); *Arbuckle Abstract Co. v. Scott*, 975 P.2d 879, 886 (Okla. 1999) ("exhaustion of administrative remedies is a simple rule of orderly procedure").

17

In Oklahoma, administrative exhaustion is not only a procedural requirement, but also a jurisdictional requirement. *See* Okla. Stat. tit. 57 § 566.5.[20] Thus, when the Oklahoma Court of Civil Appeals upheld the dismissal of Mr. Troutt's suit on grounds of exhaustion, it regarded the defect as jurisdictional. *See supra* p. 17. And under Oklahoma law, a jurisdictional defect is considered "otherwise than upon the merits" under Okla. Stat. tit. 12 § 100.[21] As a result, the state savings period applies,[22] and the Plaintiff had one year from the end of the state appellate process (October 27, 2008) to refile.[23] Mr. Troutt filed the fourth amended complaint on August 7, 2009, which fell within the one-year period.

IV. *Res Judicata*

In addition, the Defendants argue that relief is unavailable by virtue of *res judicata*.

---

[20] This statute provides:

> In any legal proceeding filed by an inmate, full and complete exhaustion of all administrative and statutory remedies on all potential claims against the state, the Department of Corrections, private entities contracting to provide correctional services, or an employee of the state or the Department of Corrections is a jurisdictional requirement and must be completed prior to the filing of any pleadings.

Okla. Stat. tit. 57 § 566.5.

[21] *See Meshek v. Cordes*, 22 P.2d 921, 925 (Okla. 1933) (stating that the failure of an action based on "want of jurisdiction . . . is such a failure otherwise than on the merits" under a predecessor to Okla. Stat. tit. 12 § 100 (citation omitted)).

[22] *See Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir.) ("exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits"), *cert. denied*, __ U.S. __, 129 S. Ct. 733 (2008); *accord Heath v. Cleary*, 708 F.2d 1376, 1380 n.4 (9th Cir. 1983) (stating that "the rule" outside of California is that dismissal for failure to exhaust administrative remedies is not considered "a decision on the merits").

[23] *See supra* p. 16.

"Res judicata is an affirmative defense and the party raising the defense . . . ha[s] the burden of setting forth facts sufficient to satisfy its requirements." *Brady v. UBS Financial Services, Inc.*, 538 F.3d 1319, 1327 (10th Cir. 2008) (citation omitted).

Oklahoma law governs with respect to the elements of *res judicata*. *See id.* (holding that Oklahoma's "*res judicata* rules" apply because the prior judgment had been rendered in this state). Under Oklahoma law, *res judicata* applies only if the prior judgment had been "'on the merits of the case'" rather than "'purely technical grounds.'" *Id.* (citation omitted).

As discussed above, the state courts did not adjudicate the claim on the merits. *See supra* pp. 16-18. As a result, the doctrine of *res judicata* is inapplicable.[24]

### Claims Based on the Oklahoma Constitution

In part, Mr. Troutt invokes the state constitution. *See supra* p. 1. However, the Defendants have not addressed the Plaintiff's claims arising under the Oklahoma Constitution. Accordingly, these claims would remain for adjudication, along with the personal capacity claims for damages under Section 1983.

### Summary of Recommendations

The Court should grant the Defendants' motion to dismiss the Section 1983 claims: (1) for damages in the Defendants' official capacities, and (2) for a permanent injunction.

---

[24] *See Howard v. Gee*, 297 Fed. Appx. 939, 940 (11th Cir. Oct. 29, 2008) (unpublished op.; *per curiam*) ("Since a finding of exhaustion is not an adjudication on the merits, the dismissal of [the plaintiff's earlier] action fails to satisfy the 'final judgment on the merits' element of *res judicata*"); *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 686 (E.D. Ky. 2004) (holding that *res judicata* did not apply because a failure to exhaust administrative remedies did not constitute a decision on the merits).

This dismissal should be without prejudice. The remainder of the dispositive motion should be denied on the Section 1983 claims.

## Notice of the Right to Object

The parties can object to the present report and recommendation. Any such objection must be filed with the Clerk of this Court by January 11, 2010. *See* Fed. R. Civ. P. 6(a)(3)(A), 6(d), 72(b)(2); 28 U.S.C. § 636(b)(1). The failure to timely object would foreclose appellate review of the suggested rulings.[25]

## Status of the Referral

The present report serves to discharge the existing referral by the presiding district judge.

Entered this 23rd day of December, 2009.

*Robert E. Bacharach*
Robert E. Bacharach
United States Magistrate Judge

---

[25] *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *cf. Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").